[Cite as *State v. Blackman*, 2011-Ohio-2262.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95168

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BRANDON BLACKMAN

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-533926

**BEFORE:** Jones, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 12, 2011

ATTORNEY FOR APPELLANT

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor

BY: Robert Botnick
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, J.:

{¶ 1} Defendant-appellant, Brandon Blackman ("Blackman"), appeals his felonious assault, kidnapping, and having weapons while under disability convictions. We affirm.

I. **Procedural History and Facts**

{¶ 2} In 2010, Blackman was indicted on the following charges: Count 1, aggravated robbery; Count 2, aggravated robbery; Count 3, felonious assault; Count 4, felonious assault; Count 5, kidnapping; and Count 6, having weapons while under disability. With the exception of Count 6, the counts contained one- and three-year firearm specifications. The case proceeded to a jury trial.

{¶ 3}   The facts elicited at trial were as follows.  The victim, Demetrius Williams, testified that he was visiting his friend Ray's house on the afternoon of January 31, 2010.   Ray was home, but outside.   Williams was "hanging out" inside the house, upstairs with Ray's brother, Josh, and another friend, Taurean.  At some point in the afternoon, co-defendant Andre Hicks and a man Williams only knew as "D" came into the house where Williams and his friends were.   Hicks accused Williams and the others of stealing his crack cocaine. Williams denied taking or knowing anything about the crack cocaine, and while Hicks was confronting Williams, a "masked" man came into the room, pulled out a gun, and beat Williams with the gun.

{¶ 4}   Meanwhile, Hicks and D were beating Taurean.[1]   According to Williams, the door to the room where the altercation occurred was at least closed, and possibly even locked. Williams tried to break free from his assailant, but when he would try to get out the door, the assailant would "yank" him back and assault him more.

{¶ 5}   Taurean was likewise struggling to break free and eventually was able to break free, open the door, and run away.   Hicks and D then turned their attention to Williams and prevented him from leaving the house.   During the struggle, the men all fell down the stairs. Hicks, D, and the masked man tried to get Williams back upstairs, but he resisted.   Williams was eventually able to run away when Hicks pushed him out a door onto a porch; Williams jumped off the porch and ran away.

---

[1]Williams testified that either Hicks or D also had a gun, but he was not sure who was holding it.

**{¶ 6}** Williams testified that when he got outside he saw a red Navigator that he recognized as the same vehicle he had previously ridden in with Hicks and Blackman. According to Williams, Hicks and Blackman were friends.

**{¶ 7}** Williams was able to run to his house, where his sister called 9-1-1 after seeing his injuries. Williams was transported by ambulance to the hospital where he was treated in the emergency room and released. Williams testified that prior to being transported to the hospital, he told his sister that Hicks and Blackman were the assailants. The sister testified that Williams told her at the hospital that Hicks and Blackman were two of the assailants.

**{¶ 8}** Williams spoke to the police at the hospital. He told them that the three assailants were Blackman, Hicks, and D. Williams also told the police that he knew Hicks and Blackman to be associated with a red Navigator. Williams never told the police that one of the assailants was masked.

**{¶ 9}** Williams later identified a photograph of Blackman and indicated that he was one of the assailants. He also made an in-court identification of Blackman. Williams admitted, however, that he actually never personally observed Blackman on the scene that day. Williams also testified that $20 he had in his pocket that day was missing after the altercation, and he believed one of the three assailants took it. In his statement to the police, however, Williams said that all three assailants went through his pockets. Williams testified that he felt fearful of testifying.

{¶ 10} Two days after the incident, the police observed a red Navigator in the general area where the assault had occurred. The vehicle was registered to Hicks. It had a broken window, and so the police effectuated a traffic stop. Hicks was the driver and Blackman was a passenger.

{¶ 11} Taurean testified for the defense. He denied being on the scene when the incident occurred.

{¶ 12} The defense's Crim.R. 29 motion for acquittal was denied. The jury found Blackman guilty of Count 4, felonious assault; Count 5, kidnapping; and Count 6, having weapons while under disability, with the attendant specifications. He was acquitted of the remaining charges. The trial court sentenced him to seven years in prison.

{¶ 13} Blackman now raises the following three assignments of error for our review:

"[I.] The convictions were against the manifest weight of the evidence because Blackman was never identified as the perpetrator of the crimes.

"[II.] The convictions were not supported by sufficient evidence and the trial court erred when it overruled appellant's motion for Criminal Rule 29 acquittal.

"[III.] The trial court committed plain error when it failed to provide the jury with a limiting instruction that Blackman's prior conviction for possession of drugs could be used solely to determine whether the state proved the element of the prior conviction, and not as corroborating evidence of his guilt in the instant case."

## II.   Law and Analysis

### A.   Weight of the Evidence

{¶ 14} In his first assignment of error, Blackman contends that the convictions

{¶ 15} are against the weight of the evidence because "[t]here was simply no testimony

at trial that identified [him] at the [scene] of the crime." We disagree.

{¶ 16} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

{¶ 17} "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 18} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; see, also, *Otten*, at 340.

{¶ 19} There was testimony that identified Blackman at the scene of the crime. Specifically, Williams testified that on the day of the incident, prior to being transported to the hospital, he told his sister that Blackman was one of the assailants. The sister also testified

that Williams told her, albeit at the hospital, that Blackman was one of the assailants. Further, the police also testified that Williams told them that Blackman was one of the assailants.

{¶ 20} The issue in this case, therefore, is reconciling inconsistencies within Williams's trial testimony. Specifically, on the one hand, Williams stated that he did not actually personally observe Blackman at the scene and described his assailant as "masked," while on the other hand, he testified that he told his sister and the police that Hicks and Blackman were two of the assailants.

{¶ 21} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. *State v. Raver*, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶21. The determination of weight and credibility of the evidence is for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *State v. Williams*, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; *State v. Clarke* (Sept. 25, 2001), Franklin App. No. 01AP-194. As such, the trier of fact is free to believe or disbelieve all or any of the testimony. *State v. Jackson* (Mar. 19, 2002), Franklin App. No. 01AP-973; *State v. Sheppard* (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. *State v. Covington*, Franklin App.

No. 02AP-245, 2002-Ohio-7037, at ¶22; *State v. Hairston*, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶17.

{¶ 22} Upon review, we do not find that the jury clearly lost its way in reconciling the conflicts in the testimony. Rather, a reasonable inference could have been made by the jury that Williams altered his in-court testimony based on his statement that he felt fearful of appearing in court. On this record, therefore, the jury did not clearly lose its way so that a new trial must be ordered.

{¶ 23} The first assignment of error is therefore overruled.

## B. Sufficiency of the Evidence

{¶ 24} In his second assigned error, Blackman contends that the evidence was insufficient to support the convictions for the same reason he contended in his manifest weight challenge, that is, there was no evidence that he was at the scene at the time of the incident. We disagree.

{¶ 25} In a sufficiency challenge, this court does not evaluate witness credibility at all. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶79. In a sufficiency review, we determine whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. Id. We examine the evidence in the light most favorable to the state and conclude whether any rational

trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386.

{¶ 26} Upon review, the state presented sufficient evidence that Blackman was at the scene of the crime. That evidence consisted of: (1) Williams's testimony that he told his sister on the day of the incident that Hicks and Blackman were the assailants; (2) the sister's testimony that Williams told her on the day of the incident that Hicks and Blackman were the assailants; and (3) the police testimony that Williams told them that the three assailants were Blackman, Hicks, and D.

{¶ 27} In light of the above, the second assignment of error is overruled.

### C. Lack of Limiting Instruction on Prior Conviction

{¶ 28} In his final assigned error, Williams contends that the trial court committed plain error by not providing a limiting instruction to the jury relative to his prior drug possession conviction that was introduced for the purpose of proving the having weapons while under disability charge.

{¶ 29} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus.

{¶ 30} Crim.R. 30 provides that a party must object to an omission in the court's instructions to the jury in order to preserve the error for appeal. Where the trial court fails to give complete or correct jury instructions, the error is preserved for appeal when the defendant objects, whether or not there has been a proffer or written jury instruction offered by the defendant. *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279.

{¶ 31} If an objection is not made in accordance Crim.R. 30, Crim.R. 52(B), the "plain-error doctrine," applies to the failure of the court to properly instruct the jury. See, also, *Williford*, supra; *State v. Gideons* (1977), 52 Ohio App.2d 70, 368 N.E.2d 67; *State v. Bridgeman* (1977), 51 Ohio App.2d 105, 366 N.E.2d 1378.

{¶ 32} In *Neder v. United States* (1999), 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35, the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

{¶ 33} Williams concedes that he did not object, nor did he request orally or in writing, the limiting instruction that he now contends should have been given by the trial court. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim.R. 52(B).

{¶ 34} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights

may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.

{¶ 35} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *State v. Perry*, 101 Ohio St.3d 118, 120, 2004-Ohio-297, 802 N.E.2d 643. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "'prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240, quoting *Long* at paragraph three of the syllabus.

{¶ 36} Upon review of the record, we find that Williams has failed to demonstrate that the trial court's failure to sua sponte give the jury a limiting instruction affected his substantial rights. We note in particular that of the six charges Williams was indicted on, the jury acquitted him of half of them, that being, two counts of aggravated robbery, and one count of felonious assault. Thus, the record indicates that the jury considered the prior conviction for the proper purpose of deciding the having weapons while under disability count.

{¶ 37} In light of the above, the third assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule

27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR