[Cite as *State v. Montgomery*, 2011-Ohio-3259.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 95700

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KENNETH MONTGOMERY

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535180

BEFORE:   Kilbane, A.J., Sweeney, J., and Jones, J.

RELEASED AND JOURNALIZED:   June 30, 2011

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road
Suite 405
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Ronni Ducoff
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Kenneth Montgomery (Montgomery), appeals his conviction. Finding no merit to the appeal, we affirm.

{¶ 2} In April 2010, Montgomery was charged with gross sexual imposition, which carried a sexually violent predator specification.[1] The matter proceeded to jury trial, at which the following evidence was adduced.

---

[1]The sexually violent predator specification was bifurcated and dismissed by the State at trial.

{¶ 3} On January 16, 2010, the victim, J.M., slept over her friend's home.[2] Her friend, J.W., lived with her grandmother and Montgomery (the father of two of the grandmother's children). J.M. and J.W. slept in the living room with Montgomery and J.W.'s cousins. Montgomery laid on a mat on the floor with J.W.'s cousins, while J.M. and J.W. were on the couch watching TV. At some point, J.W. moved to the floor with Montgomery and her cousins.

{¶ 4} Around 3:00 a.m., everyone was asleep except for J.M. and Montgomery. Montgomery approached J.M. while she was lying on the couch and rubbed and squeezed her buttock. He also kissed J.M. on the cheek. Montgomery told J.M. to spread her legs and that he was going to get on top of her. J.M. replied, "no, I don't want to." J.M. testified that Montgomery then went back and laid down on the mat. He told J.M. not to tell anyone what happened. He also said, "if you let me do this, I'll give you a Snickers." After Montgomery left in the morning, J.M. told J.W. what happened with him. J.W. told her grandmother, who called J.M.'s mother. J.M.'s mother picked up J.M. and called the police.

---

[2]The victim and State's witnesses are referred to herein by their initials in accordance with this court's policy regarding nondisclosure of identities in cases involving sexual violence.

**{¶ 5}** At the conclusion of trial, the jury found Montgomery guilty of gross sexual imposition. The trial court sentenced Montgomery to two years in prison and classified him as a Tier II sex offender.

**{¶ 6}** Montgomery now appeals, raising four assignments of error for review, which we will address out of order for ease of discussion.

ASSIGNMENT OF ERROR FOUR

**"[Montgomery's] conviction was against the manifest weight of the evidence."**

**{¶ 7}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶25, the Ohio Supreme Court restated the standard of review for a criminal manifest weight challenge as follows:

> **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, [1997-Ohio-52] 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees**

**with the factfinder's resolution of the conflicting testimony.'** Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."

{¶ 8} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720.

{¶ 9} Montgomery argues that the jury lost its way when it convicted him of gross sexual imposition. He contends that there was no evidence to corroborate J.M.'s testimony. He also attacks J.M.'s credibility, claiming that her testimony was contradictory and confusing. Specifically, he refers to J.M.'s testimony that she was asleep when J.W.'s relatives came home after the incident, while J.W.'s aunt testified that J.M. was awake and J.M.'s failure to mention that Montgomery kissed her on the cheek to the police and social worker and her failure to tell the social worker about Montgomery asking her to lay on top of her and spread her legs.

{¶ 10} We note that "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. The determination of weight and credibility of the evidence is for the trier of fact. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. As such, the trier of fact is free to believe or disbelieve all or any of the testimony. Consequently, although an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility." (Citations omitted.) *State v. Blackman*, Cuyahoga App. No. 95168, 2011-Ohio-2262, ¶21.

{¶ 11} Upon review, we do not find that the jury clearly lost its way in assessing J.M.'s testimony. Rather, J.M. admitted that she did not tell the police or social worker about the kiss. In addition, Cleveland Police Detective Alan Strickler ("Strickler") testified that he learned about the kiss from J.W. when he interviewed her at the house. Strickler further testified that the responding officer does not conduct an exhaustive interview. Instead, their role is to gather basic information and refer it to the appropriate detective bureau, which explains why "the kiss" was not described in the initial police report.

{¶ 12} Moreover, there is no requirement, statutory or otherwise, that J.M.'s testimony be corroborated as a condition precedent to conviction. See *State v. Davis*, Cuyahoga App. No. 91324, 2011-Ohio-2387, ¶10 (where this court found that there is no requirement that the rape and gross sexual imposition victims' testimony be corroborated as a condition precedent to conviction). Here, J.M. testified Montgomery approached her while she was lying on the couch and rubbed and squeezed her buttock over her clothing. He also kissed her on the cheek and told J.M. to spread her legs. Montgomery told her not to tell anyone what happened. J.M.'s testimony, the relationship of J.M. to Montgomery's family, and her subsequent disclosures do not reveal any reason for J.M. to fabricate the accusations against Montgomery.

{¶ 13} Thus, the jury could find the testimony of the State's witnesses more believable and find Montgomery guilty of gross sexual imposition. Accordingly, we cannot say that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Martin* at 175.

{¶ 14} Therefore, the fourth assignment of error is overruled.

ASSIGNMENT OF ERROR ONE

**"[Montgomery] was denied effective assistance of counsel."**

{¶ 15} In order to substantiate a claim for ineffective assistance of counsel, Montgomery must demonstrate "(a) deficient performance ('errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment') and (b) prejudice ('errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable'). *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accord *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373." *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶30.

{¶ 16} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. In evaluating whether a petitioner has been denied the effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 358 N.E.2d 623; *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905. To demonstrate that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus.

{¶ 17} In the instant case, defense counsel asked Strickler during cross-examination, to read the statement Montgomery gave to the police. Strickler testified on the night in question that Montgomery stated that he was asleep on the mat. Montgomery then woke up to use the restroom. J.M.'s feet were in his way, so he grabbed J.M. by the ankles and put her legs on the couch. After using the restroom, he went back to sleep on the mat. Montgomery stated that he never spoke to J.M. during the night and that he never offered her a Snickers candy bar.

{¶ 18} On redirect, the trial court allowed the State, over defense counsel's objection, to introduce Montgomery's prior attempted robbery and aggravated assault convictions. The State argued it could use these prior convictions to impeach Montgomery because the admission of Montgomery's statement through Strickler's testimony was hearsay. See Evid.R. 806.[3]

{¶ 19} Montgomery claims defense counsel was ineffective for introducing Montgomery's written statement because it "opened the door" for the State to bring in his prior criminal history. We disagree.

{¶ 20} In the instant case, Montgomery was represented by highly competent counsel, who made the strategic decision to introduce

---

[3]Evid.R. 806(A) provides that: "[w]hen a hearsay statement, or a statement defined in Evid.R. 801(D)(2), (c), (d), or (e), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence that would be admissible for those purposes if declarant had testified as a witness."

Montgomery's statement without having to call Montgomery to the stand. "This court must presume that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Strickland* at 689. Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective. *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001-Ohio-26, 744 N.E.2d 163." *State v. Dudley*, Cuyahoga App. No. 94972, 2011-Ohio-726, ¶7.

{¶ 21} Defense counsel's strategy was to emphasize the alleged inconsistencies in J.M.'s account as to what happened on the night in question. In opening statement, defense counsel stated "the evidence will show * * * that when confronted with these accusations * * * Montgomery said, * * * 'No, that didn't happen'" to the police and the social worker. Defense counsel also stated in opening that the jury will hear things such as "the Snickers bar that never existed." It was defense counsel's objective to show the jury that Montgomery was consistent with his denial when questioned by Strickler and the social worker. While the statement led to the disclosure of Montgomery's prior conviction, defense counsel indicated that there were reasons for this line of questioning. Defense counsel stated

he made the decision to ask Strickler about the statement because on direct examination Strickler testified that Montgomery made a statement.

{¶ 22} While the introduction of Montgomery's criminal record may have impaired his credibility, it cannot be said that it changed the outcome of the trial. As discussed in the first assignment of error, the jury did not lose its way when it convicted him of gross sexual imposition. Thus, Montgomery failed to demonstrate the existence of any materially deficient performance by counsel and resulting prejudice.

{¶ 23} Accordingly, the first assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

**"The trial court erred by not properly instructing the jury on the [State's] use of [Montgomery's] criminal history."**

{¶ 24} Montgomery argues the trial court should have instructed the jury to consider his prior attempted robbery and aggravated assault convictions only for the limited purpose to judge his credibility, not his character.

{¶ 25} However, defense counsel did not request a limiting instruction. Thus, we review this issue for plain error under Crim.R. 52. See *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶25. See, also, Crim.R. 30(A). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent

a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. In order to find plain error, it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus. Moreover, Montgomery bears the burden of demonstrating that a plain error affected his substantial rights. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶14.

{¶ 26} In the instant case, Montgomery failed to demonstrate that the trial court's failure to sua sponte give the jury a limiting instruction affected his substantial rights. There is no evidence in the record supporting his claim that the jury relied on the prior convictions when it convicted him of gross sexual imposition. Moreover, defense counsel chose not to seek a limiting instruction. Rather, in closing argument defense counsel stated that the jury "can consider [Montgomery's] record for his ability to be truthful or not. It's not that, because he committed a crime, he's likely to commit more crime. That's not it at all." The State also advised the jury to only use Montgomery's criminal history to gauge his credibility.

{¶ 27} Thus, the second assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

**"[Montgomery] was denied a fair trial in violation of [his constitutional rights] when the prosecutor engaged in misconduct during closing argument."**

{¶ 28} The test for prosecutorial misconduct in closing argument is "'whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio St.3d 108, 125, 2000-Ohio-30, 734 N.E.2d 1237, quoting *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883.

{¶ 29} Generally, the State is given a great deal of latitude during closing argument. *State v. Bies*, 74 Ohio St.3d 320, 326, 1996-Ohio-276, 658 N.E.2d 754. Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. *State v. Mann* (1993), 93 Ohio App.3d 301, 312, 638 N.E.2d 585. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Carter*, 89 Ohio St.3d 593, 603, 2000-Ohio-172, 734 N.E.2d 345; citing *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. *Smith* at 15.

{¶ 30} Montgomery argues that the prosecutor committed misconduct when she made the following two comments during closing argument.

> **"[1] Keep in mind what [Montgomery] has to gain from his innocent explanations of why he's even near [J.M.], and keep in mind what you know about him in terms of his**

**history, his prior convictions for attempted robbery and aggravated assault[.]"**

**"[2] [The] State asks that you put yourself in [J.M.'s] shoes and find her account of the sequence of events to be the accurate one that you were given."**

{¶ 31} First, he argues that the State asked the jury to convict him because of his character in that he had previous convictions. Second, he argues the State improperly incited the juror's emotions by asking the jurors to put themselves in J.M.'s shoes.

{¶ 32} A review of the transcript reveals that just before making the first statement, the State said, "[w]hen you're analyzing [Montgomery's] version [of the incident], * * * I want you to gauge his credibility as you will all the witnesses who testify; apply the tests of credibility that you apply to all witnesses."

{¶ 33} At no time did the State tell the jury that Montgomery must have committed the instant offense because he has prior convictions. In fact, in its final closing argument the State said:

**"You'll recall that I asked you to look at [Montgomery's] criminal history when you're gauging credibility. You are to consider attempted robbery and [aggravated] assault in terms of his credibility. * * * He doesn't have sexual offenses in his background. So no, I was never saying to you, because he committed that kind of offense, he committed this offense. That's wrong. I told you before, just consider it when you're looking at his statement."**

{¶ 34} Therefore, based on the foregoing, we do not find that the State's first comment was prejudicial.

{¶ 35} With regard to the second statement, defense counsel did not object, and therefore, we review for plain error. As previously stated, in order to find plain error under Crim.R. 52(B), it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. *Long* at paragraph three of the syllabus.

{¶ 36} In the instant case, the prosecutor asked the jury to put themselves in the victim's shoes and find her account of the events to be the accurate one they were given. Considering the record as a whole, we cannot conclude that the second comment constitutes plain error because we are unconvinced that the remark contributed to Montgomery's conviction. See *State v. Garcia*, Cuyahoga App. No. 79281, 2002-Ohio-504, (where this court found that the prosecutor's comment asking the jury to put themselves in the victim's shoes did not prejudice the jury.) Moreover, Montgomery has failed to demonstrate that the outcome of the trial would have been different had the prosecutor not made any of the comments. Therefore, we find that these comments did not deprive Montgomery of a fair trial nor prejudicially affect his substantial rights.

{¶ 37} Accordingly, the third assignment of error is overruled.

Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

JAMES J. SWEENEY, J., and
LARRY A. JONES, J., CONCUR