[Cite as *State v. Simmons*, 2012-Ohio-3454.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97557**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES SIMMONS

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552318

**BEFORE:** Kilbane, J., Blackmon, A.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 2, 2012

**ATTORNEY FOR APPELLANT**

Kevin M. Cafferkey
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Andrew Rogalski
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Charles Simmons ("Simmons"), appeals his felonious assault convictions. Finding no merit to the appeal, we affirm.

{¶2} In July 2011, Simmons was charged with two counts of felonious assault resulting from an incident with the named victim, John Robinson ("Robinson"). The matter proceeded to a jury trial, at which the following evidence was adduced.

{¶3} The events giving rise to the altercation between Simmons and Robinson occurred on July 4, 2011, at the home of Carol Robinson ("Carol"), in Cleveland Heights, Ohio. Carol is Robinson's aunt, the mother of Simmons's girlfriend, Tasha Robinson ("Tasha"), and the grandmother of Simmons's son, Charles Simmons, Jr. Carol had a party at her home to celebrate the Fourth of July and the birthday of Charles Simmons Jr. Guests began to arrive at the party at approximately 4:00 p.m. While outside, Robinson observed his cousin, Tasha, who is the mother of Charles Simmons, Jr., speeding into the driveway, almost hitting the guests. Tasha jumped out of her car and began screaming. Around the same time, Robinson also observed Simmons's cousin, Tameka, drive past the house with Simmons in the front passenger seat of Tameka's car. Moments later, Tameka drove back past Carol's house and parked her car in the street, without Simmons in the car.

{¶4} Robinson then observed Simmons walking down the street toward Carol's house "yellin', * * * fired up, ready to do somethin'" and "act[ing] like he want[ed] to take [his shirt] off." Simmons was "callin' everybody out," including Robinson, his uncle, Lynn Dearing ("Dearing"), and his uncle's friend. Robinson and others approached Simmons on Carol's tree lawn to tell Simmons to leave. Robinson testified that Simmons started "swingin" at him, so Robinson swung back at Simmons in his own defense. Robinson testified that Tasha then ran over to the group and threw a bicycle at Robinson. Simmons then pulled out a can of mace and sprayed Robinson in the face, causing his eyes to water and burn, but Robinson testified that he could still see. Robinson further testified that the next thing he knew, he saw "[Simmons] reach around and stab [Robinson with a knife] on [his] right side." Robinson described the knife as having approximately a four-inch blade. At that point, Tameka grabbed Simmons and took him to her car. Tameka then drove away with Simmons.

{¶5} After Robinson was stabbed, he collapsed to the ground. Robinson was bleeding from his side so he took his shirt off and pressed it against the stab wound to stop the bleeding. Police and EMS responded to the scene. Robinson was transported to Huron Hospital. Robinson was in the hospital for four days with a punctured lung. Robinson testified that as of the trial date, he was still in pain from the stab wound. He described it as "like gettin' pinched by a sharp object on this side of my chest."

{¶6} Carol testified that she was inside her house when a friend told her to "come get your daughter, get your daughter." Carol went outside and observed Simmons

on the sidewalk calling for Robinson, Dearing, and Dearing's friend.  She noticed that Simmons was holding his hand in his pocket, "like he had somethin' in it."  Robinson asked Simmons to stop and Simmons attempted to punch Robinson.  At that point, Tasha came with a bicycle and threw it at Robinson, who pushed the bicycle on the tree lawn.  After that, Simmons began spraying mace.  Carol then went inside to get her phone so she could call the police.  When she came back outside, Simmons and Tameka had left the scene and she observed Robinson on the ground bleeding.

{¶7}  Dearing testified that he was at his sister Carol's house for the birthday and Fourth of July celebration when he observed Simmons standing outside, "raisin' Cain, * * * incitin' people, carryin' on, actin' a damn fool."  Robinson approached Simmons and told him that he had to leave.  Dearing testified that Simmons had his hand in his pocket was holding something.  Simmons attempted to punch Robinson and Robinson fought back.  Tasha then approached the group and threw a bicycle at Robinson.  After that, Simmons pulled out a can of  mace and started spraying it.  Then, Dearing observed Simmons stab Robinson in the side with a knife.  Dearing testified that he has a prosthetic eye, but also testified that he was able to see clearly on the date of the incident because he was wearing his glasses.

{¶8}  Cleveland Heights Police Investigator Dominic Bodamer ("Bodamer") testified for the defense.  He testified that he took Robinson's statement on July 4, 2011, when Robinson was at the hospital.  Bodamer wrote down what Robinson said because

Robinson was not able to give a written statement. Bodamer determined that Robinson was competent before taking his statement. Robinson stated that:

> [Simmons] came toward me and started swinging. At this time, we started to fight. I had to defend myself while throwing punches. I threw a bike at him and he caught it. The fight then went into the street * * * [and that is] when [Simmons] maced me in the face. * * * We continued to fight and that's when I felt something dripping from my side. When I took my shirt off, I saw I had been stabbed and it was bleeding.

{¶9} Once Robinson completed his verbal statement, Bodamer had Robinson review and sign the statement he (Bodamer) had written. On cross-examination, Bodamer acknowledged that he is not medically qualified to determine whether someone in Robinson's condition would have definite memory of the incident.

### Sufficiency and Manifest Weight of the Evidence

{¶10} In the first assignment of error, Simmons argues that the State failed to present sufficient evidence to sustain his convictions. In the second assignment of error, he argues that his convictions are against the manifest weight of the evidence.

{¶11} The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶12} With regard to a manifest weight challenge, the Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶13} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

{¶14} Simmons was convicted of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2), which provides in pertinent part that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * * or * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶15} Simmons argues there was no direct evidence that he "knowingly caused physical harm" because all of the evidence "was circumstantial and/or based upon inferences." He attacks Robinson's credibility, noting the discrepancy between

Robinson's trial testimony and his statement to Bodamer. At trial, Robinson testified that he observed a knife in Simmons's hand and that Tasha threw the bike; whereas, Robinson's statement to Bodamer does not specifically mention a knife and states that he threw the bike. As a result, he claims that without any sufficient evidence that Simmons had a knife, it cannot be shown that he caused Robinson's injuries or that he knew his actions would cause serious physical harm to Robinson.

{¶16} We note that there is no distinction in the particular weight or way of evaluating the evidence, whether it is direct or circumstantial. *Jenks* at paragraph one of the syllabus. "Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." *Id.* at 272. Moreover, to the extent Simmons argues that the evidence is insufficient because these witnesses lacked credibility, we note that credibility challenges are not relevant to a sufficiency of the evidence claim. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

{¶17} A review of the record in the instant case reveals sufficient evidence that Simmons knowingly caused serious physical harm to Robinson when he stabbed Robinson with a knife. Robinson and Dearing both testified that Simmons approached Carol's house yelling and ready to fight. Simmons acted like he was going to take his shirt off in preparation of the fight. Simmons attempted to hit Robinson and the fight ensued. Simmons then pulled out a can of mace and sprayed Robinson in the face. After that, Robinson testified that Simmons reached around and stabbed him with a knife

on his right side and then fled the scene with Tameka. Robinson described the knife as having approximately a four-inch blade. Dearing also testified that he observed Simmons stab Robinson in the side with a knife and flee from the scene with Tameka. Robinson was then bleeding from his side, so he took his shirt off and pressed it against the stab wound to stop the bleeding. Robinson was in the hospital for four days with a punctured lung. Additionally, the jury viewed a picture of Robinson's torso with the puncture wound. Viewing this testimony in a light most favorable to the State, we find sufficient evidence that Simmons knowingly caused Robinson serious physical harm when he stabbed Robinson with a knife.

**{¶18}** Simmons's challenge to the credibility of the State's witnesses is relevant to his manifest weight of the evidence claim. We recognize that

> [t]he determination of weight and credibility of the evidence is for the trier of fact. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. As such, the trier of fact is free to believe or disbelieve all or any of the testimony. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. (Citations omitted.)

*State v. Montgomery*, 8th Dist. No. 95700, 2011-Ohio-3259, ¶ 10, quoting *State v. Blackman*, 8th Dist. No. 95168, 2011-Ohio-2262, ¶ 21.

**{¶19}** At trial, Robinson testified that he observed Simmons stab him with a knife. On cross-examination, defense counsel attempted to emphasize inconsistency by noting that Robinson's statement to Bodamer did not specifically state that Simmons stabbed

him with a knife. Robinson explained that he did not know what Simmons stabbed him with until he observed him back away with a knife in his hand. Furthermore, Robinson and Dearing testified at trial that Tasha threw the bicycle at Robinson, but Robinson's statement to Bodamer indicates that he threw the bicycle at Simmons. Robinson testified that he never told Bodamer that he threw the bicycle at Simmons. He explained that Bodamer might have forgotten to put Tasha's name in the statement. Robinson further testified that at the time he gave his statement to Bodamer, he was on medication and could not remember everything.

{¶20} In the instant case, the jury believed the testimony of the State's witnesses and returned a verdict against Simmons despite these inconsistencies. The trial court instructed the jury to "consider the credibility or believability of each person testifying * * * the interest or bias each witness had in the outcome of the verdict and * * * any and all other facts and circumstances surrounding the testimony which, in your judgment, would add or detract from the credibility and weight of the witness' testimony." We presume the jury followed these instructions. *State v. Stallings*, 89 Ohio St.3d 280, 286, 2000-Ohio-164, 731 N.E.2d 159, citing *State v. Loza*, 71 Ohio St.3d 61, 641 N.E.2d 108 (1994), and *State v. Ferguson*, 5 Ohio St.3d 160, 450 N.E.2d 265 (1983).

{¶21} Simmons further argues the jury "lost its way" by not finding him guilty of the inferior offense of aggravated assault because Robinson provoked him when he threw the bicycle at him. Simmons claims that Robinson's throwing of the bicycle incited him to use deadly force against Robinson.

{¶22} In the instant case, the trial court instructed the jury on aggravated assault under R.C. 2903.12(A)(1), which provides:

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another * * *.

This court has found that an "[a]ggravated assault occurs only when a person, under extreme emotional stress brought on by serious provocation, is incited to use deadly force and knowingly causes physical harm to another." *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16, paragraph four of syllabus (8th Dist.1982). Furthermore, for serious provocation to exist, the provocation

> must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.

*Id.* at paragraph five of the syllabus.

{¶23} We find that the testimony in the instant case does not support an inference of serious provocation. The evidence presented clearly indicates that Robinson initiated the entire incident when he walked toward Carol's house "yellin', * * * fired up, ready to do somethin'," acting like he wanted to take his shirt off and "callin' everybody out." The jury, therefore, did not lose its way in finding Simmons guilty of felonious assault as opposed to aggravated assault. Thus, we cannot say the jury clearly lost its way and

created such a manifest miscarriage of justice that Simmons's convictions must be reversed and a new trial ordered. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

**{¶24}** Accordingly, the first and second assignments of error are overruled.

**{¶25}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

PATRICIA A. BLACKMON, A.J., and
EILEEN A. GALLAGHER, J., CONCUR