[Cite as *State v. Reed*, 2024-Ohio-972.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff- Appellee,              :

                  No. 112506

        v.                               :

JOHN JORDAN, III,                        :

    Defendant-Appellant.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 14, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-664617-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin Karkutt, Assistant Prosecuting Attorney, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Defendant-appellant, John Jordan, III, appeals his convictions for murder and having weapons while under disability. Because the trial court properly denied Jordan's motion to dismiss the jury panel, did not err in admitting body-

camera footage, and where Jordan's convictions were not against the manifest weight of the evidence, we affirm the judgment.

## PROCEDURAL HISTORY AND RELEVANT FACTS

**Procedural History**

{¶ 2} On October 12, 2021, Chanika Clark was shot to death outside her home in East Cleveland, Ohio. On October 29, 2021, Jordan was indicted for two counts of murder in violation of R.C. 2903.02(A) and 2903.02(B), two counts of felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). The murder and felonious assault charges included one- and three-year firearm specifications, repeat violent offender specifications, and notices of prior conviction.

{¶ 3} Prior to the start of trial on February 1, 2023, Jordan executed a jury waiver for the having weapons while under disability charge as well as the repeat violent offender specifications and notices of prior conviction. On February 7, 2023, the jury found Jordan guilty of the murder and felonious assault charges with the firearm specifications. On that same day, the trial court found Jordan guilty of the repeat violent offender specifications and notices of prior convictions.

{¶ 4} On February 14, 2023, the trial court merged the convictions for murder and felonious assault into one count of murder. It then sentenced Jordan to a term of imprisonment of three years on the firearm specifications to be served prior to a term of imprisonment of 15 years to life on the murder count. It imposed a sentence of 36 months on the having-weapons-while-under-disability count. The

trial court then imposed a term of imprisonment of 10 years on the repeat violent offender specification and ordered all sentences to be run consecutively for an aggregate term of 34 years to life.

**Summary of Relevant Facts**

{¶ 5} On October 12, 2021, Clark lived in East Cleveland with her four children, aged 5 to 16 years old. On the day of her death, Clark, Jordan, and the children were carving pumpkins. When the carving was done, Clark and Jordan had an argument over Clark's phone. J.C., Clark's 16-year-old son, testified that the argument started inside and that they moved outside the house, continuing the argument. J.C. testified that he heard car windows being smashed outside. Later, J.C. heard a popping noise, which he thought sounded like a gunshot. J.C. saw Jordan pull out of the driveway; he then went to find his mother. He didn't find her in the house and when he went outside, he found her on the side of their home shot and bleeding.

{¶ 6} N.H., Clark's 14-year-old daughter, testified that after they carved pumpkins, she and the younger children were in her room playing Nintendo. N.H. said Clark and Jordan were arguing inside and then left. She said she and the other children heard a gunshot. She was concerned with how close it sounded and tried to get the children to the attic for safety. While she was moving the children from her room, Jordan came up the stairs and told N.H. that the gunshot was from around the corner and not to worry about it. Jordan asked if they wanted pizza, and they

told him yes. Jordan left, and the children went back into N.H.'s room. They later heard J.C. screaming outside that Clark had been shot.

{¶ 7} East Cleveland Police Department Sgt. Anthony Holmes testified that when he arrived at the scene of the shooting, he saw two adults and some children on the porch. He was directed toward Clark's body. He saw a bloody path in the grass leading to the body. Sgt. Holmes testified that J.C. was visibly upset at that time and was screaming and yelling. The state introduced exhibit No. 34, which was a copy of the body-camera footage taken by Sgt. Holmes documenting his arrival at the house. In playing exhibit No. 34 to the jury, the state only played the first 45 seconds of audio recorded on the footage, which included J.C. telling Sgt. Holmes who shot Clark and what kind of vehicle he left the scene in.

{¶ 8} Clark's autopsy revealed that she died from a gunshot wound to the back of her head and noted multiple abrasions and scratches on Clark's buttocks; injuries that could have occurred if her body had been dragged. On October 21, 2021, the vehicle driven by Jordan was found in Warrensville Heights, Ohio. Jordan's identification and a holster for a handgun were found in the vehicle. Jordan was found and arrested later that day. He had changed his appearance by cutting off his dreadlocks in the nine days following the murder.

## LAW AND ARGUMENT

### The Motion to Dismiss the Jury Panel Was Properly Denied

{¶ 9} Jordan's first assignment of error reads:[1]

The trial court erred by failing to dismiss the jury panel as it was not a jury of the defendant's peers.

{¶ 10} When the prospective jurors were brought to the courtroom for voir dire, Jordan's counsel objected to the composition of the 30-member venire because it did not contain any African-American men. Jordan's counsel offered no other argument or evidence in support of his motion. Jordan now argues that he was denied due process of law and the right to a trial by jury when his request to dismiss the jury venire was denied. The state argues that the motion to dismiss the venire was properly denied because Jordan did not make a prima facie case that the composition of the jury pool violated his constitutional rights.

{¶ 11} In *State v. Jones*, 91 Ohio St.3d 335, 340, 744 N.E.2d 1163 (2001), the Ohio Supreme Court adopted the test set forth by the United States Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed. 2d 579 (1979),

> [T]hat in order to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement, a defendant must demonstrate "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id*. at 364, 99 S.Ct. at 668, 58 L.Ed. 2d at

---

[1] Although we initially address Jordan's first assignment of error, we address the remaining assignments of error presented by Jordan out of order.

587. Accord *State v. Fulton* (1991), 57 Ohio St. 3d 120, 566 N.E.2d 1195, paragraph two of the syllabus.

{¶ 12} Jordan, at the time of his objection, did not put forth evidence that African-American men are unfairly represented in venires in Cuyahoga County. As such, he did not meet the second prong of the *Duren* test. On appeal, Jordan argues that African-American men are excluded from jury service in Ohio due to a disproportionate number being incarcerated in Ohio's prisons. However, Jordan presented no argument that African-American men in Cuyahoga County are either unfairly represented on venires or that they are systematically excluded from jury service; instead, like the appellant in *Jones*, Jordan "merely alleges that African-Americans were not adequately represented on his particular venire and jury." *Jones* at 340.

{¶ 13} The first assignment of error is overruled.

**The Trial Court Did Not Abuse Its Discretion in Admitting Evidence**

{¶ 14} Jordan's third assignment of error reads:

The trial court erred in admitting State's Exhibit 34.

{¶ 15} Jordan argues that exhibit No. 34, the body-camera footage of East Cleveland Police Department Sergeant Anthony Holmes's arrival at the scene of the murder, should not have been admitted because it contained hearsay. Jordan does not complain of any specific statements made by any particular person in his brief to this court, but argues in general that the exhibit contained statements from the children at the scene.

{¶ 16} The state argues that both J.C. and N.H. testified at trial and Jordan had the ability to cross-examine them as to any statement made on the body-camera footage. Further, the state argues that the statements played to the jury were admissible pursuant to Evid.R. 803(2) as excited utterances and were admissible as present sense impressions pursuant to Evid.R. 803(1). We address only the state's argument that the statements on the body-camera footage were excited utterances in resolving the third assignment of error.

{¶ 17} The decision to admit or exclude evidence is reviewed for an abuse of discretion. *State v. Hughes*, 8th Dist. Cuyahoga No. 109563, 2021-Ohio-2764, ¶ 39. Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally prohibited unless such testimony is subject to an exception. Evid. R. 802. An excited utterance is a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

{¶ 18} *In State v. Walker*, 8th Dist. Cuyahoga No. 106571, 2018-Ohio-5172, this court detailed the four prerequisites for admitting a statement pursuant to Evid.R. 803(2) as being

> (1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event.

*Id*. at ¶ 38, citing *State v. Brown,* 112 Ohio App.3d 583, 601, 679 N.E.2d 361 (12th Dist.1996).

{¶ 19} In this case, the children saw their mother laying on the ground, having been shot in the head. Further, when Sgt. Holmes arrived, he described the scene as being "like an all sensory alert, like everything was on high, we had a lot of screaming, a lot of yelling." As to J.C., he described J.C. in particular as "being very, very upset and irate." In determining whether the statements qualify as excited utterances, the record reflects that the statements recorded on the body camera were made after a startling event, made while under the stress caused by that event, and related to the event that the children observed.[2] As such, we cannot say that the trial court abused its discretion in admitting the 45 seconds of audio contained in state's exhibit No. 34.

{¶ 20} The third assignment of error is overruled.

**Jordan's Convictions Are Not Against the Manifest Weight of the Evidence**

{¶ 21} Jordan's second assignment of error reads:

> The guilty verdict cannot be upheld because the evidence and testimony presented at trial did not establish appellant's guilt beyond a reasonable doubt.

{¶ 22} Jordan argues that the guilty verdicts were against the manifest weight of the evidence because there was no DNA evidence submitted at trial, the murder weapon was not recovered, and there was no physical evidence linking him

---

[2] Because Jordan has not specified the content of the statements he sought to suppress, we presume the statements related to Clark's murder.

to the white truck seen in the area of the murder. The state argues that Jordan was properly convicted by sufficient and convincing evidence produced at trial.

{¶ 23} A manifest weight challenge to a conviction asserts that the state has not met its burden of persuasion in obtaining the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). A manifest weight challenge raises factual issues and we review the challenge as follows:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 24} At trial, any fact, including the perpetrator's identity, may be proven by either direct or circumstantial evidence. *State v. Jones*, 8th Dist. Cuyahoga No. 104233, 2017-Ohio-288, ¶ 28, citing *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.2d 888, ¶ 15. "[T]here is no distinction in the particular weight or way of evaluating the evidence, whether it is direct or circumstantial." *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, ¶ 20, citing *State v. Simmons*, 8th Dist. Cuyahoga No. 97557, 2012-Ohio-3454. "Circumstantial and direct evidence inherently possess the same probative value." *Id.* Because of this, the state is not required to present DNA or fingerprint evidence to meet its burden

of persuasion in a criminal case. *State v. Mendez*, 8th Dist. Cuyahoga No. 108527, 2020-Ohio-3031, ¶ 49 ("The state is not required to present DNA or fingerprint evidence to meet its burden of persuasion for a burglary charge.").

{¶ 25} Chanika Clark was killed by a single gunshot to the back of her head. Her body was found at the side of her house. J.C. testified that his mother and father were arguing, that they smashed windows, and that after he heard a gunshot, he saw Jordan leaving. After Jordan left, J.C. looked for his mother and found her lying on the ground. N.H. testified that she heard a gunshot and tried to round up the children to go to the attic for safety. After the gunshot, N.H. said Jordan came up the stairs and said the gunshot happened around the corner and that it was no big deal. He asked about pizza and then left. Surveillance video showed the Tahoe back up from the drive of Clark's house and leave the area. Jordan's vehicle was eventually located, and Jordan's identification and a holster for a handgun were found within it. After the murder, Jordan cut his hair, changing his appearance.

{¶ 26} In reviewing the evidence, we cannot say that the jury or trial court lost its way in convicting Jordan. Although there was no DNA evidence entered into evidence and the murder weapon was not recovered, the evidence presented by the state was sufficient to meet its burden of persuasion that Jordan committed the crimes of which he was convicted.

{¶ 27} The second assignment of error is overruled.

## CONCLUSION

{¶ 28} The trial court properly denied Jordan's motion to dismiss the jury venire where he did not provide evidence that African-American men are unfairly represented in venires in Cuyahoga County or systematically excluded from jury service. The trial court did not err by admitting body-camera footage that included statements made by Clark's children because those statements were admissible as excited utterances under Evid.R. 803(2). Finally, Jordan's convictions were not against the manifest weight of the evidence because the evidence presented by the state at trial was sufficient to meet its burden of persuasion that Jordan committed the crimes of which he was convicted and the jury did not lose its way.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR