[Cite as *State v. Jones*, 2017-Ohio-288.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 104233

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL D. JONES

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART; MODIFIED IN PART,
### AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598760-A

**BEFORE:** Keough, A.J., Kilbane, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 26, 2017

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
820 West Superior Avenue, Suite 800
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Mary M. Dyczek
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Defendant-appellant, Michael Jones ("Jones"), appeals the trial court's judgment, rendered after a bench trial, finding him guilty of burglary and grand theft, and sentencing him to consecutive sentences totaling eight and a-half years. We affirm in part, modify in part, and remand for proceedings consistent with this opinion.

## I. Factual and Procedural Background

{¶2} A Cuyahoga County Grand Jury indicted Jones on one count of burglary in violation of R.C. 2911.12(A)(2), with notice of prior conviction and repeat violent offender specifications; and grand theft in violation of R.C. 2913.02(A)(1). Jones was on community control in Cuyahoga C.P. No. CR-15-592895, in which he had pleaded guilty to aggravated theft, when he was indicted. Jones pleaded not guilty and waived his right to a jury trial.

{¶3} Sandra Harris testified at trial that at approximately 3:00 p.m. on August 24, 2015, as she was working in a home on West 35th Street in Cleveland, she saw a man and a woman running through the next door neighbor's backyard. About ten minutes later, Harris saw the same man and woman running through the neighbor's backyard; this time, the man was carrying a TV. Harris called the police to report the suspicious activity.

{¶4} Cleveland police officer David Santiago and his partner responded and spoke with Harris, who told them the incident had occurred next door at 4229 West 35th Street. The resident, Fabrice Dongo, was not home, so the police went to Dongo's other next-door neighbor to see if that neighbor, Enrique Carmona, had seen anything.

**{¶5}** Carmona told the officers that while he was taking out the garbage at approximately 3 o'clock that afternoon, he had seen a white, bald-headed male and a white female in his backyard trying to go over the fence. The male was holding a TV and the woman was holding a laptop computer bag. Carmona said that when he yelled, "what the hell are you doing?" — the male and female ran away. Carmona described the male as in his late 20's to early 30's, and the female as in her early 20's, and told the police that he had seen the male and female "hanging out" at a house on Muriel Street that was located around the corner from his house only a few minutes' walk away.

**{¶6}** The officers went to the house on Muriel Street and spoke with Betty Jo Cupach, who told the officers that she lived in the downstairs unit of the home with her granddaughter and Jones, her granddaughter's boyfriend. The officers then obtained a photo of Jones from a law enforcement database and showed the picture to Cupach, who identified the male in the picture as Jones. Cupach told the officers that she would let them know when Jones returned home.

**{¶7}** The officers then went to Dongo's house to investigate the suspicious activity report. The officers found the backdoor of the home open and upon entering saw that the house had been ransacked. They also found a broken window that had been used to gain entry to the home. Near the back door, the officers found a black purse that contained an opened package of men's white tee shirts and two cell phones. The photo that appeared on the lockscreen of one of the phones was of Jones.

**{¶8}** After they found the cell phone, the police went back to Carmona's house and showed him the picture of Jones on the phone. Although Carmona was reluctant to testify at trial and stated that he could not remember what he told the officers, after watching a video of his conversation with the officers taken from the officers' body cameras, he acknowledged that the video demonstrated that he told the officers he was "100 percent certain" that the male in the photo on the phone was the same man he had seen in his backyard.

**{¶9}** Dongo testified that he lived alone, and worked during the week as a senior auditor for an accounting firm and on weekends as a disc jockey. He said that he sometimes works from home. Dongo testified that he was working in Youngstown, an hour and a half away from his home, when the burglary occurred.

**{¶10}** Dongo said that the police called him at work around 4:00 p.m. on August 24 and told him of the burglary. He arrived home at approximately 5:30 p.m. to find his house cordoned off and police officers on the scene. He testified that his house was "messy" and not "the same way I left it when I left the house in the morning." He identified for the police numerous items that were missing from his home, including two laptop computers, two flat screen TV's, an amplifier, a CD player, several turntables, a Blu-ray player, several pairs of shoes, shirts, sunglasses, colognes, and a watch. Dongo placed the total value of the stolen property at $23,662, and said he had not given anyone permission to take anything from his house on August 24, 2015.

{¶11} Dongo testified that although he had never spoken to Jones and his girlfriend, he had seen them sitting on the porch of Cupach's home on Muriel Street "always watching, looking at me," when he came home from work. Dongo identified Jones in court as the male who lived in the house on Muriel Street and whom he had seen watching him.

{¶12} As the police were leaving Dongo's house, Cupach flagged them down and told them Jones had returned home. Officer Santiago testified that as he approached Cupach's house, he saw Jones standing in the front doorway of the house. When Santiago identified himself as a police officer and told Jones that he wanted to speak with him, Jones turned and fled toward the back of the house. Santiago ran to the rear of the house, where he saw Jones exit a second story window on top of the roof. When Santiago ordered Jones to stop, Jones climbed back in the window. Santiago and his partner swept the house but were unable to find Jones. After searching for several hours, a SWAT team eventually found him hiding in a crawl space between the walls of Cupach's home.

{¶13} Dongo testified that later that evening, Cupach came to his house and gave him a package of unopened tee shirts that belonged to him. Cleveland police officer John Farnsworth testified that he and another officer found Dongo's laptop, laptop bag, and his CPA study materials, as well as a blue bag containing Dongo's RayBan sunglasses, camera, headphones, perfume, and a plaque with his name on it in a wooded area behind Cupach's garage. Cleveland police detective Gerald Hoval confirmed that

the police did not find any of Dongo's property in Cupach's house, and that no fingerprints were obtained from any of the recovered stolen items. He also confirmed that no fingerprints were taken of the broken window in Dongo's home, and no DNA evidence was obtained from inside his home.

{¶14} Upon the conclusion of the state's case, the trial court denied Jones's Crim.R. 29(A) motion for acquittal. No witnesses testified in Jones's defense, and thereafter, the trial court found him guilty of all counts and in violation of the community control sanctions in Case No. CR-15-592895. At sentencing, the trial court merged the burglary and grand theft convictions, and sentenced Jones to seven years incarceration for the burglary conviction and 18 months for the community control violation, to be served consecutively. This appeal followed.

## II. Law and Analysis

A. Sufficiency and Manifest Weight of the Evidence

{¶15} In his first assignment of error, Jones contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because there was insufficient evidence that he committed burglary and grand theft. In his second assignment of error, Jones asserts that his convictions are against the manifest weight of the evidence.

{¶16} A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13. An appellate court's function when reviewing the sufficiency of the evidence to support a

criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶17} Jones was convicted of burglary in violation of R.C. 2911.12(A)(2), which provides the following:

> No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person * * * is present or likely to be present, with purpose to commit in the habitation any criminal offense.

{¶18} He was also convicted of grand theft in violation of R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * *[w]ithout the consent of the owner or person authorized to give consent."

{¶19} We find that the state failed to present evidence of the "present or likely to be present" element of burglary under R.C. 2911.12(A)(2).

{¶20} This court has discussed the "likely to be present" element of the crime of second-degree burglary as follows:

> A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. * * * In determining whether persons were present or likely to be present under R.C. 2911.12(A)(2), "the defendant's knowledge

concerning habitation is not material. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely." * * * Merely showing that people dwelled in the residence is insufficient; the state must adduce specific evidence that the people were present or likely to be present at the time of the burglary. * * *

*State v. Cole*, 8th Dist. Cuyahoga Nos. 103187, 103188, 103189, and 103190, 2016-Ohio-2936, ¶ 40, quoting *State v. Palmer*, 8th Dist. Cuyahoga No. 89957, 2008-Ohio-2937, ¶ 13.

**{¶21}** The Ohio Supreme Court has recognized that the state can establish the "likely to be present" element under R.C. 2911.12(A)(2) by showing that the occupants of the dwelling were "in and out on the day in question" and were temporarily absent when the burglary occurred. *State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (1977), paragraph one of the syllabus. Conversely, Ohio courts have found that "if the occupants of a house are gone for the entire workday, they are not 'likely to be present' during the day." *State v. Miller*, 2d Dist. Clark No. 2006 CA 98, 2007-Ohio-2361, ¶ 16. *See also State v. Meisenhelder*, 8th Dist. Cuyahoga No. 76764, 2000 Ohio App. LEXIS 4745 (Oct. 12, 2000) (where a person individually occupies an apartment and his usual and ordinary work habits take him away from that apartment regularly during certain hours of the day, there is minimal likelihood that a person will be present in the structure) *Id.* at 14, citing *State v. Lockhart*, 115 Ohio App.3d 370, 373, 685 N.E.2d 564 (8th Dist.1996).

**{¶22}** In order to prove that someone was "likely to be present," the state must adduce specific evidence concerning the habits of the residents or others who have access to the premises to demonstrate the likelihood of a person's presence at the time of the

offense. *State v. Kottner*, 1st Dist. Hamilton No. C-120350, 2013-Ohio-2159, ¶ 46. Here, the state failed to elicit specific evidence that Dongo was likely to be present at the time of the burglary.

{¶23} Dongo testified that he lived alone, and that he was employed as an auditor during the workweek and a disc jockey on the weekends. Although Dongo testified that he "sometimes" worked at home, there was no testimony regarding when or how often he worked at home such that the jury could have inferred that he was likely to be present on the day of the burglary. Did Dongo work at home during the week or only on weekends? Was it once a month? Every week? In the morning? In the afternoon?

{¶24} Likewise, there was no evidence that Dongo ever returned home during the workday. *See State v. Richardson*, 8th Dist. Cuyahoga No. 100115, 2014-Ohio-2055, ¶ 23 (victim not likely to be present where the burglary occurred shortly before noon on a workday, and there was no evidence that the victim sometimes returned home during the workday); *State v. Brown*, 1st Dist. Hamilton No. C-980907, 2000 Ohio App. LEXIS 1820 (Apr. 28, 2000) (likely to be present element not satisfied where burglary occurred during the occupant's workday and no evidence was offered that the occupant ever came home during his workday).

{¶25} The only testimony whatsoever regarding the likelihood of Dongo being present in the home was that he "sometimes" worked at home. At most, Dongo's testimony that he "sometimes" works at home established a *possibility* that he could have been home at the time of the burglary. But a "mere possibility" is insufficient to

establish the "likely to be present" element. *See State v. Smith*, 8th Dist. Cuyahoga No. 91715, 2010-Ohio-1655, ¶ 20 (the term "likely" connotes more than a mere possibility but less than a probability or reasonable certainty.) Although we view the evidence in a light most favorable to the prosecution upon a sufficiency review, we conclude that in this case, a reasonable trier of fact could not find, beyond a reasonable doubt, that someone was likely to be present when the burglary occurred. Accordingly, the state failed to prove an essential element of burglary under R.C. 2911.12(A)(2).

**{¶26}** Nevertheless, Jones may be convicted of the lesser included offense of burglary under R.C. 2911.12(A)(3) if the evidence is sufficient to establish the offense. Burglary under R.C. 2911.12(A)(3) is a lesser included offense of burglary under R.C. 2911.12(A)(2) because it contains all the elements of R.C. 2911.12(A)(2) except the "present or likely to be present" element. *Cole*, 8th Dist. Cuyahoga Nos. 103187, 103188, 103189, and 103190, 2016-Ohio-2936, at ¶ 45, citing *State v. Butler*, 8th Dist. Cuyahoga No. 97649, 2012-Ohio-4152, ¶ 18.

**{¶27}** Jones argues that the evidence is insufficient to support his convictions because no one saw him burglarize the house, and there were no fingerprints or DNA evidence tying him to the burglary. He also contends that he could not have been the individual who burglarized Dongo's home because so many items were stolen but only a few items were recovered. Finally, he asserts that no one identified him as the male Harris and Carmona saw running while carrying a TV.

**{¶28}** Jones conveniently ignores the substantial circumstantial evidence presented by the state that, if believed, identifies him as the person who broke into Dongo's house. "Like any fact, the state can prove the identity of the accused by 'circumstantial or direct' evidence." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.2d 888, ¶ 15. "A witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator." *Id.* at ¶ 19.

**{¶29}** Carmona testified that on August 24, 2015, he saw a male carrying a TV and a woman carrying a laptop computer bag in his backyard. He directed the police to the house on Muriel Street where he had seen the man and woman "hanging out." Although Carmona was reluctant to testify at trial and asserted that he could not identify Jones as the perpetrator, he acknowledged that when the police showed him a picture of Jones on the lockscreen of a cell phone they had found at the back entrance of the victim's house after the burglary, he told the police that he was "100 percent certain" that the individual on the phone was the male he had seen in his backyard with the TV.

**{¶30}** The state presented evidence that the window of Dongo's house was broken to gain entry into the home. The state also presented evidence that Jones lived with Cupach, and that although not all of the stolen items were recovered (presumably because they were hidden elsewhere), a number of stolen items were found hidden in the bushes behind Cupach's garage. On the evening of August 25, 2015, after Jones had been arrested, Cupach returned to Dongo an unopened package of tee shirts that belonged to

him. Thus, although the police did not find any of the stolen items in Cupach's house, Cupach apparently did.

{¶31} The state also presented evidence that Jones fled from the police when they approached to question him, and then hid for several hours in a crawl space in Cupach's house, forcing the police to break through the drywall to find him. Jones's flight is evidence of his consciousness of guilt. Indeed, "an accused's flight from custody, resistance to arrest, concealment, * * * and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 167.

{¶32} Viewing this evidence in a light most favorable to the prosecution, it is apparent that any rational trier of fact could have found the essential elements of burglary under R.C. 2911.12(A)(3) and grand theft in violation of R.C. 2913.02(1) proven beyond a reasonable doubt. Thus, the evidence was sufficient to support Jones's convictions, as modified.

{¶33} Likewise, Jones's convictions, as modified, are not against the manifest weight of the evidence. In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92226, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d. at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional cases in which the evidence weighs heavily against the conviction." *Id*.

{¶34} This is not that exceptional case. The circumstantial evidence against Jones is overwhelming. The victim, Dongo, testified that Jones was "always watching" him from the porch of the house on Muriel Street when he returned home from work. After the burglary, the police found a cellphone near the backdoor of Dongo's house with a picture of Jones on the lockscreen. When the police showed the picture to Carmona, he pointed out the house on Muriel Street where the male hung out, and told the police that he had seen the male that afternoon in his backyard carrying a TV. Cupach, who lived at the house on Muriel Street, told the police that Jones also lived there. The police found a number of stolen items in the bushes behind Cupach's garage. And Jones fled from the police and hid for hours in Cupach's house after the police approached him and told him they wanted to talk to him.

{¶35} The only possible inference from this evidence is that Jones burglarized Dongo's house when he knew Dongo would not be home. Accordingly, Jones's convictions for burglary under R.C. 2911.12(A)(3), as modified, and grand theft under R.C. 2913.02(A)(1) are not against the manifest weight of the evidence.

{¶36} Under App.R. 12(A)(1)(a), this court has the authority to modify the trial court's judgment. Therefore, we remand with instructions for the trial court to modify

the judgment of conviction to find Jones guilty of burglary under R.C. 2911.12(A)(3) and to resentence him accordingly. The first assignment of error is sustained in part, and the second assignment of error is overruled.

B. Consecutive Sentences

**{¶37}** In his third assignment of error, Jones contends that the trial court erred in imposing consecutive sentences.

**{¶38}** Consecutive sentences may be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20-22. Under the statute, consecutive sentences may be imposed if the trial court finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition, the court must find that any one of the following applies:

> (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense;
>
> (2) at least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or
>
> (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶39}** In order to impose consecutive terms of imprisonment, a trial court must both make the statutory findings mandated for consecutive sentences under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at the syllabus.

**{¶40}** Jones concedes that the trial court made the appropriate findings at the sentencing hearing, and the journal entry of sentencing reflects those findings. Accordingly, this assignment of error is without merit and overruled.

**{¶41}** Judgment affirmed in part, modified in part, and remanded.

It is ordered that the costs herein taxed be shared equally.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions, as modified, having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR