[Cite as *State v. Mendez*, 2020-Ohio-3031.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108527 |
| v. | : | |
| ALEX MENDEZ, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 21, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-633800-A

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Callista Plemel, Assistant Prosecuting Attorney, *for appellee.*

Buckeye Law Office, and P. Andrew Baker, *for appellant.*

MARY EILEEN KILBANE, J.:

**{¶ 1}** Defendant-appellant, Alex Mendez ("Mendez"), appeals his convictions for burglary, intimidation, and criminal damaging. For the reasons that follow, we affirm the convictions.

## I. FACTUAL BACKGROUND

**{¶ 2}** Mendez was 39-years-old at the time of the events described herein. He lived next door to the apartment where Sonia L. Oliveras ("Sonia"), 22 years old at the time, lived with her mom, whose name is also Sonia Oliveras ("Oliveras"). Sonia testified that their homes were near enough that Mendez would be able to hear if she opened her door. Sonia earned an associate's degree in criminal justice and works in security at a bank.

**{¶ 3}** Mendez and Sonia knew each other as friends since about October 2017 and began dating around June 2018. Sonia testified that they frequently, almost daily, smoked marijuana together and that Mendez would frequently have "fits of jealousy" in which he would "go crazy," "throw himself over the edge," and start "screaming at me" and "putting his hands on me."

### A. September 2018 Trip to Pennsylvania

**{¶ 4}** On September 22, 2018, Mendez and Sonia drove to Pennsylvania in Mendez's vehicle. Sonia testified that the trip was not planned and that it was not her choice to go with him to Pennsylvania that day. She had been hanging out with him and they were already on the freeway when she realized they were driving towards Pennsylvania.

{¶ 5} She testified that Mendez became violent and abusive towards her during the trip. Sonia testified that Mendez hit or grabbed her face, back, and arms and "was just losing his mind" before he stopped the vehicle at a park near a McDonald's and punched her in the face. Sonia testified that Mendez "started beating on me" and "spit on me right there in the middle of the street." She further testified that he slammed her on the floor, took her ID, phone, and keys and told her to find her own way back home and broke her phone by throwing it on the ground. The police intervened.

{¶ 6} Sonia received medical treatment at a hospital in Pennsylvania for injuries allegedly caused by Mendez. Surprisingly, she still received a citation for disorderly conduct. Mendez also received a citation. The state presented photos of a bruise on the upper right side of her chin, two scratches or scrapes on her back, a bruise on the middle of her left thigh, and marks on both her arms. The photos are black and white, but she testified the marks and bruises on her body were black and blue when the photos were taken.

{¶ 7} Oliveras drove to Pennsylvania and took Sonia home the next day. Afterwards, Sonia reported the incident with Mendez to the Cleveland police and obtained a temporary restraining order against him. However, the couple eventually reconciled and started attending church together and couples counseling with the church pastor. Around November 14, 2018, Mendez and Sonia went to the police station together and she withdrew her report about the September 2018 trip.

## B.  November 2018 Trip to Pennsylvania

{¶ 8}  In November 2018, the couple again embarked on a drive to Pennsylvania in Mendez's vehicle.  Oliveras joined them.  The reason for the trip was because Sonia had to appear in court for the citation she had received during the altercation with Mendez during the September 2018 trip to Pennsylvania.  This time, the trip was uneventful until the drive back to Cleveland.

{¶ 9}  The couple headed home after the court date around 3:00 p.m.  Sonia and Oliveras testified that the weather and roads were bad and Oliveras asked him to slow down, but he just laughed and kept speeding.  The three arrived home safely around 11:00 p.m., but the arguing continued.

{¶ 10}  Sonia testified that Mendez refused to let her or her mother gather their belongings from his car.  She and her mother left the vehicle, deciding to leave their belongings for the time being.  Oliveras went to the apartment to use the restroom.  She entered through the back door and did not notice anything unusual about the apartment at the time.  Meanwhile, Sonia and Mendez argued outside.  Sonia testified that Mendez spoke disrespectfully about her mother and was "assassinating her character" to "mentally hurt her."  Sonia also testified that Mendez threatened that she would pay if she chose her mom over him.  Shortly thereafter, Sonia and Oliveras left in their own car to pick up Sonia's sister, Kiara Reyes ("Reyes"), who lived about fifteen minutes away by car.

## C. Phone Calls and Voicemail from Mendez

{¶ 11} On the way back home, Sonia testified that Mendez called her phone several times. She picked up a few times, but eventually let his calls go to voicemail because he was "screaming at the top of his lungs" that she had betrayed him and was worthless.

{¶ 12} During one of the calls that she answered, Mendez asked her where she was and said he did not believe that she went to pick up Reyes, her sister. During at least one of the calls, Sonia testified that he asked her why there was a subpoena posted on her apartment door and called her a snitch. She testified that she was not aware of any subpoena at the time. He continued to call, but she eventually stopped answering, after which Mendez left a voicemail message.

{¶ 13} Sonia testified that in his voicemail message, Mendez said "let me see if it's true" in reference to whether she was home and that she could hear Mendez kicking something. She played the voicemail for her mother, sister, and two police officers, but the voicemail was inadvertently deleted before trial and was not itself presented as evidence.

{¶ 14} Oliveras testified that she also listened to the voicemail and heard Mendez's voice and noise that sounded like things breaking. Reyes testified that she also listened to the voicemail. She said she heard Mendez saying "let's see if it's true" and believed he was referring to whether Sonia was home. Reyes also testified that she heard "pounding" in the voicemail that "sounded like a banging noise." Detective Zuleika Matos, who had arrived at the scene that night, testified that she

also listened to the voicemail that night before it was deleted and heard Mendez saying "we are going to find out if you're really home or not" along with some "loud banging." She testified that it did not cross her mind to record the voicemail on the night of the incident.

### D. Damage to Oliveras's Apartment

{¶ 15} After the drive home from picking up Reyes, Sonia and her mother returned to their apartment with Reyes. They each testified that the locked door to their apartment had been kicked in and the side of the wall broken. Once inside, they testified that chairs and furniture were broken. The state presented photographs of damage to the apartment door and interior. Sonia and Oliveras testified that Mendez did not have permission to enter their home.

{¶ 16} Reyes called the police to report the incident. Detective Matos and Officer McGilbra arrived on the scene. Reyes and the Cuyahoga Metropolitan Housing Authority ("CMHA") police officers observed Mendez leaving the back door of his home and informed him that he was a suspect. Detective Matos testified that she saw Mendez walking away and detained him. She played the voicemail for Mendez and testified that he stated in response: "It is what it is. Take him to jail." Detective Matos testified that she understood those words to be an admission that it was him on the voicemail. She also testified that Mendez stated that he did not do anything wrong and that Sonia was setting him up.

**E. The Subpoena**

{¶ 17} Sonia testified that during one of Mendez's phone calls to her, he asked why a subpoena was posted to her front door. Sonia testified that she was not aware of any subpoena when Mendez called and surmised that it had been posted to her door while she was away during the November 2018 trip to Pennsylvania. Oliveras would not have noticed the subpoena on the front door earlier that night because she had entered the apartment through the back door.

{¶ 18} Detective Matos testified that she obtained a subpoena from Mendez's jacket pocket when she and the other officer detained him the night of the November 2018 incident. The subpoena listed Sonia as a witness and Mendez as a defendant. She did not know how Mendez came into possession of the subpoena.

## II. PROCEDURAL BACKGROUND

{¶ 19} On December 3, 2018, a grand jury indicted Mendez on one count of abduction under R.C. 2905.02(A)(2), a third-degree felony, for an offense dated September 26, 2018 in case number CR-18-633800. In a separate indictment also dated December 3, 2018, a grand jury indicted Mendez on three additional counts for an offense dated November 28, 2018 in case number CR-18-634916. The state moved to join the two cases on March 18, 2019, and the trial court consolidated the cases, dismissing CR-18-634916. All counts in both indictments proceeded to trial under case number CR-18-633800.

{¶ 20} Mendez faced the following charges at trial: abduction under R.C. 2905.02(A)(2) (Count 1), a third-degree felony; burglary under R.C. 2911.12(A)(2),

a second-degree felony (Count 2); criminal damaging or endangering under R.C. 2909.06(A)(1), a first-degree misdemeanor (Count 3); intimidation of crime victim or witness under R.C. 2921.04(B)(1), a third-degree felony (Count 4); telecommunications harassment under R.C. 2917.21(B)(1), a first-degree misdemeanor (Count 5). Trial commenced on March 18, 2019. The state called six witnesses: Sonia, Oliveras, Reyes, Detective Matos of the CMHA police department, Detective Luis Rivera of the City of Cleveland, and Detective Stacee Wright of the CMHA police department.

## A. Opening Statement

{¶ 21} During his opening statement, Mendez's counsel stated the following:

I don't like my client. I don't. I don't think he likes me too much. He is almost 40 years old. He's living in the projects. He has some mental issues. He's dating a next door neighbor who is 20 years younger, Sonia. It's not a good recipe if you ask me. It's not a good recipe.

{¶ 22} He also stated the following:

And you will have to look at what the case is — how the case is presented, what the facts are presented, what the truth is, and whether, in fact, all the elements are met beyond a reasonable doubt if you can convict.

* * *

Again, each and every charge, each and every count has its own elements. And for you to find guilty beyond a reasonable doubt, you will have to find each and every element that they met in presenting the evidence beyond a reasonable doubt.

{¶ 23} Trial counsel also stated the following during his closing argument:

Objective information tells you that my client is not guilty. I don't like him. I don't like him at all. And God knows looking at this story, he is not innocent. But he is not guilty. Thank you.

## B. Cross-Examination of Sonia

{¶ 24} On cross-examination, Mendez's trial counsel questioned Sonia as follows, in part:

COUNSEL: When you were growing up, any issues with the physical abuse in the family?

[SONIA]: No.

COUNSEL: Mental abuse?

[SONIA]: No.

COUNSEL: Sexual abuse?

[SONIA]: No.

{¶ 25} Trial counsel also cross-examined Sonia about a number of other topics. In response to questions about her marijuana use, she testified that she was high for the duration of the September 2018 trip to Pennsylvania and that when she and Mendez were together, they smoked marijuana "all day every day." He also asked why she got back together with Mendez after the September 2018 trip. She explained that he started going to church with her and she decided to forgive him because she thought he had changed. He also pointed out that she studied some of the crimes charged against Mendez in obtaining her criminal justice degree. On redirect, Sonia clarified that she studied many other crimes with which Mendez had not been charged.

## C. Verdict and Sentencing

{¶ 26} The jury returned the following verdict: Not guilty on Count 1 (abduction, third-degree felony); guilty on Count 2 (burglary, second-degree

felony); guilty on Count 3 (criminal damaging, first-degree misdemeanor); guilty on Count 4 (intimidation of crime victim or witness, third-degree felony); and guilty, Count 5 (telecommunications harassment, first-degree misdemeanor).

{¶ 27} The court sentenced Mendez to two years in prison and postrelease control up to three years. He was sentenced to two years on Count 2; six months on Count 3 concurrent; two years on Count 4 concurrent; and six months on Count 5 concurrent.

{¶ 28} This appeal follows. Mendez asserts the following three assignments of error:

### Assignment of Error One

Defendant-Appellant's convictions must be reversed due to receiving ineffective assistance of counsel.

### Assignment of Error Two

Defendant-Appellant's convictions were against the manifest weight of the evidence.

### Assignment of Error Three

The conviction for intimidation and the enhancement for criminal damaging must be reversed due to insufficiency of the evidence.

## III. LAW AND ANALYSIS

### A. Ineffective assistance of counsel

{¶ 29} In his first assignment of error, Mendez argues that counsel was ineffective in two ways. Mendez first contends counsel was ineffective based on statements he made during his opening statement. Second, Mendez contends counsel was ineffective during his cross-examination of Sonia.

**{¶ 30}** Our review of counsel's performance is highly deferential. *State v. Korecky*, 8th Dist. Cuyahoga No. 108328, 2020-Ohio-797, ¶ 20, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because we presume licensed attorneys are competent, the party claiming ineffective assistance of counsel bears the burden of proving that counsel was ineffective. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

**{¶ 31}** "To gain reversal on a claim of ineffective assistance of counsel, a defendant must show that 1) his 'counsel's performance was deficient,' and 2) 'the deficient performance prejudiced the defense.'" *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, ¶ 18, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The first prong of *Strickland*'s test requires the defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Id.*, quoting *Strickland* at 688. "*Strickland*'s second prong requires the defendant to show 'a reasonable probability that but for counsel's errors, the proceeding's result would have been different.'" *Id.*, quoting *State v. Winters*, 8th Dist. Cuyahoga No. 102871, 2016-Ohio-928, ¶ 25, citing *Strickland*. That is, the second prong requires a determination as to whether the defense was prejudiced by counsel's ineffectiveness. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 140, citing *Strickland* at 687.

**{¶ 32}** "While '[t]he right to counsel is the right to the effective assistance of counsel,' 'trial strategy or tactical decisions cannot form the basis for a claim of

ineffective counsel.'" *Fisher* at ¶ 19, quoting *Strickland* at 686, citing *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

### 1. Opening Statement

{¶ 33} Mendez first argues that he received ineffective assistance of counsel because counsel stated the following during his opening statement: "I don't like my client. I don't think he likes me too much." Mendez claims this statement guaranteed that the jury would also start disliking the client.

{¶ 34} As a general matter, "[b]oth the prosecution and the defense have wide latitude during opening and closing arguments." *State v. Washington*, 8th Dist. Cuyahoga No. 74850, 1999 Ohio App. LEXIS 6391, 18 (Dec. 30, 1999). "Debatable trial tactics do not constitute a deprivation of effective assistance of counsel." *State v. Heard*, 8th Dist. Cuyahoga No. 52303, 1987 Ohio App. LEXIS 7477, 8-9 (June 11, 1987), quoting *State v. Clayton*, 12 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶ 35} When viewed in light of the entire opening statement, we conclude that counsel's aside that he did not like Mendez was a trial tactic to ask the jury to ignore their own personal feelings towards Mendez and focus objectively on the facts. In the context of his complete opening statement, trial counsel informed the jury that its job was to objectively review the evidence presented. He also noted that a guilty verdict would only be appropriate if evidence beyond a reasonable doubt was met for each and every element of each and every charge. Therefore, we find that counsel's remark during opening statement did not fall below an objective

standard of reasonableness and did not deny Mendez his right to effective assistance of counsel. As these facts fail to satisfy the first prong of the *Strickland* test, we need not consider the second prong regarding prejudice.

{¶ 36} Mendez relies upon a case, *State v. Burgins*, in which the Fourth District reversed a conviction based on ineffective assistance of counsel where the defendant's counsel stated multiple times in closing arguments that he did not believe his client and that a guilty verdict would not surprise him. *State v. Burgins*, 44 Ohio App.3d 158, 542 N.E.2d 707 (4th Dist.1988). The court reasoned that, based on such comments, "the jury will no doubt speculate that defendant has admitted his guilt to his attorney." *Id.* at 160. We do not find *Burgins* persuasive.

{¶ 37} Counsel's comments here, unlike those in *Burgins*, did not invite the jury to speculate that Mendez had admitted guilt to counsel off-the-record. Admitting dislike is not the same as suggesting an admission of guilt. Thus, this is not a case where counsel's comments "undermined his own client's credibility." *State v. Smiley*, 8th Dist. Cuyahoga No. 72026, 1999 Ohio App. LEXIS 5053, 16 (Oct. 28, 1999) (ineffective assistance of counsel where, in closing argument, defense counsel abandoned his client's testimony so that the jury could infer that he knew off-the-record that his client was guilty).

### 2. Cross-examination

{¶ 38} Mendez next argues that trial counsel erred while cross-examining Sonia. He points to three questions that he claims were irrelevant and prejudicial: 1) whether Sonia was a previous victim of physical abuse while growing up; 2)

whether she was a victim of sexual abuse; and 3) whether she was a victim of mental abuse. Mendez contends that these questions are beyond the boundary of a reasonable trial strategy and therefore constitute ineffective assistance of trial.

{¶ 39} "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101. "Ineffective assistance has been found when counsel needlessly introduced damaging testimony during cross-examination." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 157.

{¶ 40} Mendez has not shown that trial counsel's cross-examination of Sonia needlessly introduced damaging testimony. To the contrary, the questions at issue were within the scope of the direct examination and, had the witness answered differently, might have undermined her credibility. On direct, Sonia mentioned throughout her testimony that she suffered physical, mental, and emotional abuse from Mendez. She described the injuries Mendez inflicted on her and identified photographs of the same. She also described that she was affected emotionally from her interactions with Mendez and that she was mentally and emotionally affected at work after having had to testify about the events in court. Thus, we do not find that trial counsel's questions on cross-examination were so irrelevant or damaging that they were below an objective standard of reasonableness. As these facts fail to satisfy the first prong of the *Strickland* test, we need not consider the second prong regarding prejudice.

{¶ 41} Mendez relies on *State v. Yarber*, 102 Ohio App.3d 185, 656 N.E.2d 1322 (12th Dist.1995). In *Yarber*, trial counsel conducted insubstantial cross-examination and the questions he did ask elicited responses favorable to the prosecution. *Yarber* at 189. Moreover, the cross-examination in *Yarber* was only one aspect of the entire trial strategy that contributed to the court finding ineffective counsel. We do not find *Yarber* persuasive and for the reasons discussed, do not find that counsel's cross-examination resulted in ineffective assistance of counsel.

{¶ 42} Accordingly, Mendez's first assignment of error is overruled.

**B. Manifest weight of the evidence**

{¶ 43} In his second assignment of error, Mendez argues that his burglary and intimidation convictions must be reversed under the manifest weight of the evidence standard. Mendez only discusses the burglary and intimidation convictions. Thus, we will limit our discussion to the same.

**1. Standard of Review**

{¶ 44} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in

which the evidence weighs heavily against the conviction.'" *Westlake v. Y.O.*, 8th Dist. Cuyahoga No. 107226, 2019-Ohio-2432, ¶ 21, quoting *Thompkins* at 388.

{¶ 45} In the instance case, Mendez was convicted of burglary under R.C. 2911.12(A)(2) and intimidation of a crime victim or witness under R.C. 2921.04(B)(1). We find that the state met its burden of persuasion. Having reviewed the record, we cannot conclude that the conviction is against the manifest weight of the evidence.

### 2. Burglary

{¶ 46} Mendez contends that the burglary conviction was against the manifest weight of the evidence because the voicemail in which Sonia, Oliveras, Reyes, and Detective Matos testified they heard Mendez speaking along with banging sounds, was not itself available. He also points out that there was no DNA or fingerprint evidence placing him inside the Oliveras's apartment at the time of the offense. Finally, he argues that there was evidence that Sonia set him up.

{¶ 47} R.C. 2911.12(A)(2) "Burglary" provides:

(A) No person, by force, stealth or deception, shall do any of the following:

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense

{¶ 48} We do not find that the burglary conviction was against the manifest weight of the evidence. That the voicemail itself was not available at trial does not

bar a conviction where four witnesses consistently testified to the content of the voicemail. Nor does the absence of DNA or fingerprint evidence.

{¶ 49} "[T]here is no distinction in the particular weight or way of evaluating the evidence, whether it is direct or circumstantial." *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, ¶ 20 citing *State v. Simmons*, 8th Dist. Cuyahoga No. 97557, 2012-Ohio-3454. "Circumstantial and direct evidence inherently possess the same probative value. In some instances, certain facts can only be established by circumstantial evidence." *Id.* "Like any fact, the state can prove the identity of the accused by 'circumstantial or direct' evidence." *State v. Jones*, 8th Dist. Cuyahoga No. 104233, 2017-Ohio-288, ¶ 28, quoting *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.2d 888, ¶ 15. Thus, the state is not required to present DNA or fingerprint evidence to meet its burden of persuasion for a burglary charge. *See State v. Townsend*, 8th Dist. Cuyahoga No. 97733, 2012-Ohio-4400, ¶ 7-12 (burglary not against manifest weight of the evidence despite absence of DNA or fingerprint evidence where two officers testified they saw the victim kick out the window of the home being burglarized and flee).

{¶ 50} Although the voicemail itself was not available, four witnesses testified that they heard Mendez's voice on the voicemail; heard him say something to the effect of finding out whether Sonia was home; and heard loud, banging sounds that could have been him banging down the apartment door and destroying the furniture inside. Sonia also described multiple other instances in which Mendez lost his temper and engaged in destructive behavior, such as smashing her phone.

Further, Sonia and Oliveras testified that their apartment door was kicked down, the wall was damaged, and chairs and furniture were strewn and broken, which, if believed, constituted evidence of criminal damaging. The state presented photographs that corroborated this testimony. Both Sonia and Oliveras testified that Mendez did not have permission to enter their home. We find all of this to be credible, consistent evidence.

{¶ 51} In addition, "an accused's flight from custody, resistance to arrest, concealment, * * * and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." *State v. Jones*, 8th Dist. Cuyahoga No. 104233, 2017-Ohio-288, ¶ 31, quoting *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 167. Reyes reported the burglary the same night that Mendez had dropped off Sonia and at their home after their trip to Pennsylvania and testified that she saw Mendez walking out of the back door of his home. Detective Matos also testified that she saw Mendez walking away from the scene that night. Mendez's flight is evidence of his consciousness of guilt. We find all this evidence to be more credible than Mendez's attempt to establish that Sonia had set him up.

{¶ 52} Accordingly, we find all this testimony credible and conclude that the weight of the evidence shows beyond a reasonable doubt that Mendez committed the charged burglary. Thus, the burglary conviction was not against the manifest weight of the evidence.

### 3. Intimidation

**{¶ 53}** Mendez argues that the intimidation conviction was against the manifest weight of the evidence because the voicemail from Mendez did not establish that he threatened Sonia in direct reference to preventing any charges against him. He concedes, however, that the phone calls could be sufficient for a conviction for telecommunications harassment (Count 5).

**{¶ 54}** We find that the weight of the evidence supports that Mendez knowingly attempted to intimidate Sonia pursuant to R.C. 2921.04(B)(1).

**{¶ 55}** R.C. 2921.04(B)(1) provides:

(B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

(1) The victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding

**{¶ 56}** Contrary to Mendez's arguments, the statute does not require the intimidation to have included a threat not to file charges. *State v. Kilton*, 8th Dist. Cuyahoga No. 106864, 2019-Ohio-87, ¶ 8. The state presented testimony that Mendez became angry when he discovered a subpoena that listed Sonia as a witness and himself as the defendant. Sonia testified she was not aware of any subpoena at that time. Credible evidence shows that he called Sonia to confront her about the subpoena, called her a snitch, and then proceeded to damage her apartment. Detective Matos testified that she found a subpoena in Mendez's jacket pocket that night that listed Sonia as a witness and Mendez as the defendant. Apparently,

Mendez saw the subpoena on the door before Sonia, confronted her about it over the phone, and took it down and put it in his pocket before Sonia saw it. Accordingly, we find sufficient evidence that Mendez intimidated Sonia in an attempt to prevent her from complying with the subpoena or cooperating with the prosecution of criminal charges brought against him.

{¶ 57} We also find sufficient evidence to reasonably conclude that Mendez intimidated Sonia "by force or by unlawful threat of harm." The statute "requires only an 'attempt to influence, intimidate, or hinder,' and it is not required that the victim actually feel intimidated." *State v. Kilton*, 8th Dist. Cuyahoga No. 106864, 2019-Ohio-87, at ¶ 8, citing *State v. Serrano*, 2016-Ohio-4691, 69 N.E.3d 87, ¶ 44 (8th Dist.). "The term 'threat' represents a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 39. "An 'unlawful threat of harm' requires more than just a threat, and is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *Kilton* at ¶ 9, citing *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 41-42.

{¶ 58} The state presented evidence that Mendez committed criminal damaging, which is a predicate offense that satisfies the unlawful threat requirement. R.C. 2909.06(A)(1) provides:

(A) No person shall case, or create a substantial risk of physical harm to any property of another without the other person's consent:

(1) Knowingly, by any means * * * .

{¶ 59} The weight of the evidence here supports that Mendez knowingly caused substantial damage to Sonia's and Oliveras's apartment and Mendez does not dispute there was sufficient evidence to support a guilty verdict of criminal damaging. Sonia testified that Mendez called her and asked about a subpoena posted to her apartment door. She also testified that she did not know about any subpoena when Mendez called to confront her about it. Mendez then removed the subpoena from the door and put it in his pocket before Sonia had the chance to see it. Sonia, Oliveras, Reyes, and Detective Matos testified they heard Mendez say in a voicemail to Sonia that he was going to check whether Sonia was home and heard loud noises and banging over the voicemail. Sonia and Oliveras testified that they returned home from picking up Reyes to find that the door to their apartment had been kicked down and that the walls, chairs, and furniture had been damaged. They also testified that Mendez did not have permission to enter their apartment. Based on testimony and photographs, the weight of the evidence supports that Mendez entered the apartment without permission and knowingly caused harm to it.

{¶ 60} Considering all the testimony and evidence presented at trial, we hold that the intimidation conviction was not against the manifest weight of the evidence. There is substantial, competent, credible evidence to support that Mendez knowingly threatened and caused harm to Sonia's property after seeing the

subpoena that listed her as a witness in a case against Mendez and called her a snitch with the intention of preventing her from testifying against him.

**{¶ 61}** Appellant's second assignment of error is overruled.

## C. Insufficient evidence

**{¶ 62}** Mendez argues in his final assignment of error that there was insufficient evidence to support his conviction for intimidation (Count 4) and criminal damaging (Count 3). As Mendez only discusses the convictions for intimidation and criminal damaging, we limit our discussion to the same.

### 1. Standard of Review

**{¶ 63}** "The test for sufficiency of the evidence requires a determination of whether the prosecution met its burden of production at trial." *Westlake v. Y.O.*, 8th Dist. Cuyahoga No. 107226, 2019-Ohio-2432, ¶ 16, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Id.*, citing *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Walker*, 150 Ohio St. 3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

### 2. Intimidation

{¶ 64} Mendez argues that the phone calls were merely evidence of general threats, abusive language, and venting that did not amount to intimidation of a witness. "A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. Szafranski*, 8th Dist. Cuyahoga No. 107905, 2019-Ohio-4349, ¶ 30, citing *State v. Robinson*, 8th Dist. Cuyahoga No. 96463, 2011-Ohio-6077. As we have already determined that the intimidation conviction was not against the manifest weight of the evidence, we also find that the conviction was supported by sufficient evidence.

### 3. Criminal Damaging

{¶ 65} Regarding the criminal damaging charge, Mendez argues that the evidence is only sufficient to support a second-degree conviction, not a first. A first-degree misdemeanor conviction under R.C. 2909.06 requires that the defendant created "a risk of physical harm to any person." If the defendant did not create a risk of physical harm to a person, a violation of the criminal damaging statute is a misdemeanor of the second degree.

{¶ 66} Mendez concedes that the evidence supported a guilty verdict for a second-degree criminal damaging conviction. He contends, however, that there was insufficient evidence to support a first-degree conviction because he did not create a risk of physical harm to any person during the criminal damaging. He argues that

he did not create a risk of physical harm because he was the only one present in the apartment during the damaging.

{¶ 67} We find that the evidence was sufficient to show that Mendez created a risk of physical harm to others during his criminal damaging. The testimony established that neither Sonia nor Oliveras were in the apartment when the criminal damaging occurred, but that does not mean there was no risk of physical harm. Sonia testified that she told Mendez over the phone that she and Oliveras had left their apartment to pick up Reyes, who only lived about fifteen minutes away. There was a risk that Sonia and Oliveras could have returned to their own apartment at any moment while Mendez was there and been harmed by him. In addition, the noise Mendez was making while destroying the Oliveras's apartment could have alerted some neighbors who might have approached the apartment to investigate, putting them at risk of harm as well. Accordingly, we affirm Mendez's first-degree conviction for criminal damaging under R.C. 2909.06.

{¶ 68} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR